| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JAMIE J. MORRIS and KATIE MORRIS,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, successor due to the acquisition of Countrywide Home Loans and FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE,<br><br>Defendants. | Case No: C 09-2849 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Docket 18 |

Plaintiffs Jamie J. Morris and Katie Morris allege that Defendants Bank of America (as the successor to Countrywide Home Loans aka BAC Countrywide Home Loans Servicing LP (BAC)) and Federal National Mortgage Association (FNMA) violated federal and state laws in connection with the financing of their home. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a). The parties are presently before the Court on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. (Docket 18.) Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

# I. BACKGROUND

## A. FACTUAL SUMMARY

The following facts are based on the allegations of the First Amended Complaint, which are presumed true for purposes of this motion. (Docket 15.) On June 10, 2007, Plaintiffs financed their home in McKinleyville, California, through Greenpoint Mortgage Funding, Inc. (Greenpoint). Am. Compl. ¶ 13. The loan amount of $311,000 was memorialized in a Promissory Note (Note) and secured by a Deed of Trust on their property. Id. Ex. A. According to Plaintiffs, Greenpoint was obligated under the Truth in Lending Act (TILA), 15 U.S.C. § 1635, to provide them with two copies each of a completed Notice of Right to Cancel at or before the closing. Id. ¶¶ 25-26. Greenpoint allegedly failed to comply with that obligation. Id.

By letter dated December 5, 2008, Plaintiffs, through counsel, sent Greenpoint, BAC and FNMA a letter styled as a "Qualified Written Request," pursuant to the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e). Am. Compl. ¶ 24 & Ex. A.[1] Among other things, the letter demanded the production of various documents, such as copies of all assignments of the Note, documents purporting to grant authority to service the loan, and documents from Plaintiffs' loan servicing file. Id. Ex. A at 2. The letter also accused "Greenpoint/Countrywide" of having violated TILA by failing to provide them with the requisite copies of the Notice of Right to Cancel. Id. at 3. Plaintiffs offered to "settle this rescission issue" by proposing that Greenpoint/Countrywide agree either to modify the loan terms or to rescind the loan entirely. Id. Plaintiffs warned that if Greenpoint/Countrywide refused their proposal, they would declare the loan rescinded. Id. at 3-4. Plaintiffs allege that "Defendants did not properly respond to [their] request." Id. ¶ 75.

---

[1] BAC is alleged to be the loan servicer while FNMA allegedly is the current owner of the loan. Id. ¶ 84. For simplicity, the Court refers to BAC as the defendant for purposes of the discussion set forth in this Order, although Bank of America is the actual defendant in place of BAC.

### B. PROCEDURAL HISTORY

On June 25, 2009, Plaintiffs filed the instant action in this Court against Defendants Bank of America, as the successor of BAC, and FNMA, as the owner of the loan. After Defendants filed a motion to dismiss the Complaint, Plaintiffs filed a First Amended Complaint on October 14, 2009, against the same parties. The amended complaint alleges five claims for: (1) rescission and damages under TILA; (2) violation of RESPA; (3) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200; (4) breach of the implied covenant of good faith and fair dealing (against FNMA only); and (5) slander of credit. Defendants now move to dismiss the First Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), and to strike certain allegations under Rule 12(f). The motion has been fully briefed and is ripe for adjudication.

## II. LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). If a complaint fails to satisfy Rule 8, it "must be dismissed" under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. The pleadings must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), a court must take the allegations as true and construe them in the light most favorable to plaintiff. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Id. at 1950. Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]" Id. at 1951 (quoting Twombly, 550 U.S. at 557). In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005); Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

### III. DISCUSSION

#### A. TILA

##### 1. Overview

In their first claim for relief, Plaintiffs allege that Defendants "violated TILA by failing to provide Plaintiffs with two copies of the Notice of Right to Cancel on each loan." Am. Compl. ¶¶ 25, 38.[2] "Congress enacted TILA 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'" Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1118 (9th Cir. 2009) (quoting 15 U.S.C. § 1601). In credit transactions involving the borrower's principle dwelling, the borrower has the right to rescind the transaction up to midnight of the third business day following the consummation of a loan transaction. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a). The creditor must notify the borrower of this right by providing "two copies of the notice of the right to rescind to each consumer entitled to rescind[.]" 12 C.F.R. § 226.23(b)(1); 15 U.S.C. § 1635(a).

If the lender fails to provide a notice of the right to rescind or the disclosures required by TILA, the time limit for rescission is extended to "three years after the date of

---

[2] Although this allegation refers to multiple loans, the amended complaint only provides details concerning one loan. See Am. Compl. ¶¶ 25-26. In amending its complaint, Plaintiff shall rectify this discrepancy.

consummation of the transaction or upon the sale of the property, whichever occurs first, . . ." 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3); see Miguel v. Country Funding Corp., 309 F.3d 1161, 1163 (9th Cir. 2002). In addition, a borrower may sue to recover "actual damages" and/or statutory damages. 15 U.S.C. § 1640(a)(1)-(2). The Ninth Circuit has held that "in order to receive actual damages for a TILA violation . . . a borrower must establish detrimental reliance." Smith v. Gold Country Lenders (In re Smith), 289 F.3d 1155, 1157 (9th Cir. 2000). The consumer must show that he or she "would either have secured a better interest rate elsewhere, or foregone the loan completely." Id. In the instant case, Plaintiffs seek both rescission and damages.

### 2. **Proper Parties**

The threshold question presented is whether Defendants are proper parties to the TILA claim. As a general rule, liability under TILA extends only to creditors and their assignees. See 15 U.S.C. §§ 1640, 1641. A *loan servicer* cannot be held liable under TILA unless it also owns or owned the loan obligation at some point in time. 15 U.S.C. § 1641(f)(1) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section *unless* the servicer is or was the owner of the obligation."); Mulato v. WMC Mortg. Corp., 2009 WL 3561536 *6 (N.D. Cal., Oct. 27, 2009) ("As a loan servicer that has not been alleged to own Plaintiff's mortgage notes, Chase cannot be held liable for TILA violations."). Although Plaintiffs' TILA claim is alleged against Defendants generally, only FNMA is alleged to be an assignee of a creditor. Am. Compl. ¶ 84. Because it is alleged only to be a servicer, BAC is DISMISSED from Plaintiffs' TILA claim, without leave to amend.

### 3. **Rescission Claim**

a)   *Plaintiffs' Receipt of the Notice of Right to Cancel*

Defendants next challenge Plaintiffs' demand for rescission under TILA on the ground Plaintiffs failed to seek rescission within three days of consummating the loan transaction. See 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a). In particular, they contend that Plaintiffs' allegation that they were not provided with any notices of their right to rescind the loan is not

- 5 -

credible in light of evidence demonstrating that they, in fact, received such notices. As support, Defendants attach what are purported to be copies of the notices bearing both of Plaintiffs' signatures. See Defs.' Request for Judicial Notice (RJN) Exs. D, E. In addition, Defendants argue that under 15 U.S.C. § 1635(c), Plaintiffs' signatures on the notices "serve as written acknowledgement that they received copies of two properly executed NRCs [Notices of Right to Cancel] and gives rise to a presumption of delivery." Defs.' Mot. at 7.[3]

On a motion to dismiss, a court may consider a document that is not attached to the pleadings only if that document is referenced therein *and* its authenticity "has not been questioned." No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003). In this case, however, Plaintiffs challenge the authenticity of the documents proffered by Defendants, and dispute that they received completed copies of the notices. (Pls.' Opp'n at 4-5.) As such, in connection with the instant motion, the Court is foreclosed from resolving the question of whether Plaintiffs were indeed provided with the notices, as claimed by Defendants. See Olivera v. Am. Home Mortg. Servicing, Inc., 2010 WL 334848 at *4 (N.D. Cal. Jan. 22, 2010) (declining to take judicial notice of alleged Notice of Right to Cancel proffered by defendants where Plaintiffs challenged its authenticity) (Armstrong, J.).

Even if it were proper to take judicial notice of the copies of the notices proffered by Defendants, application of the rebuttable presumption under 15 U.S.C. § 1635(c) is inappropriate at this stage of the proceedings. By definition, a rebuttal presumption involves consideration of *evidence* to determine whether the presumption has been rebutted. See Glucksman v. First Franklin Finan. Corp. 601 F. Supp. 2d 511, 514 (E.D.N.Y. 2009) (declining to apply 15 U.S.C. § 1635(c) on a motion to dismiss because it requires the

---

[3] Title 15, United States Code, section 1635(c), which is entitled "Rebuttable presumption of delivery of required disclosures," states that: "Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof."

consideration of evidence).  The Court cannot consider evidence on a motion to dismiss unless it converts the motion to one for summary judgment under Rule 56, which the Court declines to do.  See Fed.R.Civ.P. 12(d); Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  While the presumption under section 1635(c) may ultimately prove dispositive of Plaintiffs' TILA claim, that determination cannot be made on a motion to dismiss.  See 5 B C. Wright & A. Miller, Federal Practice & Procedure § 1357 (3d ed. 2006). ("[C]ourts have refused to consider presumptions in favor of the defendant on a motion to dismiss since presumptions are evidentiary standards that are inappropriate for evaluation at the pleadings stage.").

      b)  *Tender Requirement*

  Alternatively, Defendants argue that Plaintiffs cannot seek rescission because they have not adequately alleged facts to satisfy the "tender" requirement.  TILA provides that when a borrower provides notice of rescission, the creditor must cancel any security interest and return any money or property (such as earnest money) to the borrower.  15 U.S.C. § 1635(b).  "*Upon the performance of the creditor's obligations under this section*, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value."  Id. (emphasis added).  In other words, the borrower's obligation to tender generally arises after the lender has first agreed to rescind.  See Belini v. Wash. Mut. Bank, FA, 412 F.3d 17, 25 n.2 (1st Cir. 2005); see also Yamamoto v. Bank of New York, 329 F.3d 1167, 1170-71 (9th Cir. 2003) (holding that the district court has equitable discretion in adjudicating a motion for summary judgment to require proof of ability to tender).

  Consistent with section 1635(b), Plaintiffs allege in their amended complaint that they gave notice of rescission, Am. Compl. ¶ 24, and that "[they] are ready, willing and able to tender upon knowing the amounts required to tender, including offsets for damages as pled herein, by a combination of a refinance, personal cash reserves and assistance from family," id. ¶ 46.  Defendants assert that these allegations are insufficient because Plaintiffs have not alleged that "[they] currently have a commitment to refinance from a lender in place, let alone the terms of the refinance, including the amount and identity of the lender, nor does the FAC

contain any specific factual allegation that Plaintiff has secured sufficient 'assistance from family' or the nature, extent, or amount of that 'assistance.'" Defs.' Mot. at 9. Defendants cite no authority for the proposition that a heightened pleading standard applies to claims for rescission under TILA. Indeed, this Court has ruled that the level of specificity demanded by Defendants is *not* required to meet the tender requirement at the pleading stage. See Olivera, 2010 WL 334848 at *4 (finding allegation in complaint that "Plaintiffs will tender their proceeds (and have the ability to do so)" sufficient to withstand dismissal under Rule 12(b)(6)). Thus, the Court DENIES Defendants' motion to dismiss Plaintiffs' claim for rescission as to FNMA.

### 4. **Damages Claim**

In addition to seeking rescission, Plaintiffs also seek damages under TILA. TILA provides a one-year statute of limitations for claims for civil damages. 15 U.S.C. § 1640(e). The limitations period commences at the time the loan was placed. King v. Cal., 784 F.2d 910, 914 (9th Cir. 1986). Defendants argue that the statute commenced to run on June 10, 2007, when Plaintiffs signed their loan documents, but Plaintiffs did not file suit until June 25, 2009, well beyond the one year limitations period. Defs.' Mot. at 11.

In response, Plaintiffs insist that their TILA damages claim is not based on flaws in the original loan documentation, but rather, on Defendants' alleged failure to respond to Plaintiffs' demand for rescission made on December 5, 2008, which is less than a year prior to the commencement of this action. Pls.' Opp'n at 12; Am. Compl. ¶¶ 24; 53-55, 78. However, Plaintiffs cite no authority establishing that Defendants' alleged failure to respond to their letter—which Plaintiffs allege was sent under the auspices of RESPA—constitutes a violation of TILA. See 15 U.S.C. §§ 1635, 1640(a). As such, the Court concludes that Plaintiffs have failed to state to claim for damages and this aspect of Plaintiffs' TILA claim is DISMISSED without leave to amend.

**B.    RESPA**

    **1.    <u>Overview</u>**

Plaintiffs' second claim for relief alleges that Defendants violated RESPA by failing to respond to their "Qualified Written Request" letter of December 5, 2008. Am. Compl. ¶¶ 68-81. RESPA imposes certain disclosure obligations *on loan servicers* who transfer or assume the servicing of a federally related mortgage loan. 12 U.S.C. § 2605(b). Under section 2605, a loan servicer "who receives a qualified written request from the borrower (or an agent of the borrower) for information *relating to the servicing of such loan*" is required to provide the borrower with a written acknowledgment of receipt within twenty days. Id. § 2605(e)(1)(A) (emphasis added). Within sixty days of receipt of the letter, excluding weekends and holidays, the servicer must conduct an investigation; if the servicer determines that the account is in error, the servicer must make appropriate corrections to the borrower's account and notify the borrower of the correction in writing. 12 U.S.C. § 2605(e)(2)(A). If the servicer determines the account is not in error, the servicer must provide the borrower with a written explanation or clarification stating the reasons why the servicer believes the borrower's account is correct. Id. § 2605(e)(2)(B). If the request pertains to a request for information, the servicer must either provide the information to the borrower or explain why such information is unavailable. Id. § 2605(e)(2)(C).

    **2.    <u>Demand for Rescission</u>**

Defendants contend that a qualified written request only applies to matters relating to loan servicing, while Plaintiffs' letter related to loan origination and rescission, which are outside the reach of section 2605(e). Defs.' Mot. at 13-14. The Court agrees, in part. Under RESPA, a "qualified written request" is defined as written correspondence that "(i) includes, or otherwise enables the servicer to identify the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error *or* provides sufficient detail to the servicer regarding *other information* sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(i)-(ii) (emphasis added). Here, the majority of the letter is focused on Plaintiffs' allegation that the "loan being serviced

is defective" ostensibly because the copies of the Notice of Right to Cancel were missing the dates by which to rescind. Am. Compl. Ex. B at 3. The letter makes an offer to "settle this rescission issue" through either a loan modification or rescission of the loan. Id. at 3-4. Matters pertaining to rescission are not within the scope of section 2605(e). See Steele v. Chase Manhattan Mortg. Corp., 2005 WL 2077271 at *2 (E.D. Pa. 2005) (letter which "concerned only [plaintiff's] rescission demand" was beyond the scope of 12 U.S.C § 2605). Thus, Plaintiffs have failed to state a claim under RESPA to the extent that Defendants failed to respond to Plaintiffs' demand for rescission regarding their alleged failure to receive copies of the Notice of Right to Cancel.

### 3. Demand for Servicing-Related Documents

The only aspect of Plaintiffs' RESPA claim that is cognizable pertains to their request for documents relating to Defendants' servicing of the loan, which arguably falls within the ambit of the "other information" provision of section 2605(e)(1)(B)(ii). Nonetheless, Plaintiffs have failed to allege sufficient facts to support this remaining aspect of their claim.

First, only BAC is alleged to have been acting as a loan servicer. Am. Compl. ¶ 84. Therefore, FNMA is not a proper party to Plaintiffs' RESPA claim. See Ash v. OneWest Bank, FSB, 2010 WL 375744 at *6 (E.D. Cal. Jan. 26, 2010) (dismissing RESPA claim against non-servicer).

Second, Plaintiffs' allegations regarding damages are deficient. RESPA provides that a borrower may recover "actual damages" if the loan servicer fails to comply with its provisions. 12 U.S.C. § 2605(f)(1)(A). Though Plaintiffs insist that they have alleged damages in support of their RESPA claim, they fail to identify what harm they allegedly suffered or where in the amended complaint such allegations appear. Pls.' Opp'n at 18. "Absent factual allegations suggesting that Plaintiffs suffered actual damages, Plaintiffs' RESPA claim is insufficiently pled and subject to dismissal." Amaral v. Wachovia Mortg. Corp., 2010 WL 618282 at *5 (E.D. Cal., Feb. 17, 2010).

Finally, Plaintiffs fail to allege sufficient facts regarding Defendants' alleged non-compliance with RESPA. The amended complaint alleges only that "Defendants did not

properly respond to Plaintiffs' request." Am. Compl. ¶ 75. It is unclear from this conclusory allegation whether Plaintiffs are claiming that Defendants provided *no response* to their request or that Defendants provided a response that was, in Plaintiffs' view, insufficient under RESPA. If it is the latter, Plaintiffs must allege facts demonstrating how Defendants' response was insufficient. In either event, Plaintiffs must clarify this ambiguity.

Accordingly, Plaintiffs' second claim for violation of RESPA is DISMISSED. Plaintiffs are granted leave to amend as set forth above and only to the extent that Plaintiffs' RESPA claim is predicated on BAC's alleged failure to respond to their request for loan servicing documents.

### C. UCL

Plaintiffs' third claim for violation of the UCL is entirely dependent on Defendants' alleged violations of TILA and RESPA and Defendants' reporting of negative credit information. Am. Compl. ¶¶ 87-88. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.Code § 17200. It incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). The Court's analysis regarding the viability of these underlying claims is set forth above in the sections discussing the TILA and RESPA claims, and below with respect to the slander of credit claim. As such, Plaintiffs' UCL claim is DISMISSED with limited leave to amend for the same reasons set forth *supra* and *infra*.[4]

### D. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiffs' fourth claim is for breach of the implied covenant of good faith and fair dealing. This covenant provides that no party to a contract may do anything that would deprive another party of the benefits of the contract. Foley v. Interactive Data Corp., 47 Cal.3d 654, 683-684 (1988). "This covenant is read into contracts in order to protect the express covenants

---

[4] Defendants also assert that Plaintiffs' UCL claim is preempted as to post-origination conduct. Defs.' Mot. at 16. Because this argument rests upon facts not alleged in the pleadings, the Court cannot consider Defendants' argument at this juncture.

- 11 -

or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." Wolf v. Walt Disney Pictures & Television, 162 Cal.App.4th 1107, 1120 (2008) (internal quotations marks omitted). "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation" and there "is no obligation to deal fairly or in good faith absent an existing contract." Racine & Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal.App.4th 1026, 1031-32 (1992) (internal quotation marks omitted).

Here, Plaintiffs predicate their claim for breach of the implied covenant of good faith and fair dealing on Defendants' alleged violations of TILA and RESPA. Am. Compl. ¶¶ 99, 105. However, the pleadings fail to allege which contract forms the basis of such claim. Instead, the amended complaint vaguely alleges that there were "written agreements with Plaintiff based upon the term on the loan as stated in the Note." Am. Compl. ¶ 94. To the extent the contract at issue is the Note itself, the claim fails because none of the Defendants are alleged to be parties thereto. The claim also fails due to Plaintiffs' failure to specify what benefit they have been deprived of by virtue of Defendants' alleged conduct.[5] Given these deficiencies, Plaintiffs' fourth claim for breach of the implied covenant of good faith and fair dealing is DISMISSED with leave to amend.

E. **SLANDER OF CREDIT**

In their fifth and final claim for relief, Plaintiffs allege that Defendants caused "false statements regarding Plaintiff's (sic) creditworthiness" to be published with "various credit reporting agencies." Am. Compl. ¶ 115. However, the FCRA expressly preempts claims for defamation, invasion of privacy, and negligence based on the reporting of credit information unless the plaintiff alleges and proves malice or willful intent to injure" him. See 15 U.S.C. § 1681h(e); Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1168 (9th Cir. 2009). Though Plaintiffs dispute that their claim is preempted, they fail to address any of the authority

---

[5] To the extent that Plaintiffs' claim is based on conduct preceding the formation of any agreement, it fails to state a claim. See McClain v. Octagon Plaza, LLC, 159 Cal.App.4th 784, 799 (2008).

cited by Defendants and otherwise provide no meaningful analysis to support their position. Although FCRA preemption is inapplicable where the defendant's conduct is malicious or willful, Plaintiffs have alleged no such facts nor have they indicated in their opposition that they have the ability to do so. Accordingly, Plaintiffs' slander of credit claim is DISMISSED without leave to amend.

### F. MOTION TO STRIKE

Under Rule 12(f), a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Pursuant to this rule, Defendants move to strike Paragraphs 33, 34, 80 and Exhibit E to the Amended Complaint. Paragraphs 33 and 34 and Exhibit E pertain to a letter on Countrywide letterhead ostensibly authored by John Tillis III, an Executive Research Specialist with Countrywide Bank FSB, which recites the company's position that it has no legal obligation to provide borrowers with completed copies of the Notice of Right to Cancel. In Paragraph 80, Plaintiffs allege that "Countrywide" has received a number of complaints regarding its alleged failure to respond to qualified written requests.

Defendants contend that the aforementioned allegations and the letter are unrelated to this case because Countrywide Bank FSB was not the lender and is not named as a party in this action. Defs.' Mot. at 19. Plaintiffs do not dispute Defendants' contentions, but instead, assert that the letter and related allegations are "directly related" to paragraph 48 of the amended complaint wherein Plaintiffs allege that "the improper providing of rescission forms is a prevalent problem in the lending industry, known by [BAC] and FNMA . . . ." Am. Compl. ¶ 48; Pl.'s Opp'n at 24. Plaintiffs' argument lacks merit. Absent facts demonstrating the nexus between the letter and the events underlying this case, the Court is persuaded that neither the letter nor the allegations relating to the letter are material to this case. The Court therefore GRANTS the motion to strike, with leave to amend to allege facts demonstrating such a nexus.

**IV. CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART and Defendants' motion to strike is GRANTED. Plaintiffs shall have seven (7) days from the date this Order is filed to file a Second Amended Complaint consistent with the Court's rulings, as set forth above. In the event Plaintiffs fail to file an amended complaint within that time-frame, the dismissals of Plaintiffs' claims, as discussed above, will be with prejudice. Defendants shall file their response to the Second Amended Complaint no later than fourteen (14) days after Plaintiffs file their amended pleading.

2. The Case Management Conference currently scheduled for March 2, 2010 is CONTINUED to **April 15, 2010 at 2:30 p.m.** The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court. Plaintiffs shall be responsible for filing the statement as well as for arranging the conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

3. The parties may commence discovery upon the issuance of this Order.

4. This Order terminates Docket No. 18.

IT IS SO ORDERED.

Dated: March 2, 2010

SAUNDRA BROWN ARMSTRONG
United States District Judge