UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JAMIE J. MORRIS and KATIE MORRIS,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>BANK OF AMERICA, successor due to the acquisition of Countrywide Home Loans aka BAC Home Loans Servicing, LP and FEDERAL NATIONAL MORTGAGE ASSOCIATION aka FANNIE MAE,<br><br>　　　　　Defendants. | Case No: C 09-02849 SBA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

　　　　Plaintiffs Jamie J. Morris and Katie Morris bring the instant action against BAC Home Loans Servicing, LP ("BACHL") and Federal National Mortgage Association ("FNMA"), alleging federal claims under the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"), and supplemental state law causes of action under California's Unfair Competition Law ("UCL") and for breach of the implied covenant of good faith and fair dealing.  The parties are presently before the Court on Defendants' motion to dismiss, or alternatively, to strike portions of Plaintiffs' Second Amended Complaint ("SAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f), respectively.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion to dismiss as to Plaintiffs' federal claims and declines to assert supplemental jurisdiction over Plaintiffs' state law causes of action.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

The following facts are based on the allegations of the SAC, which are presumed true for purposes of this motion. On June 10, 2007, Plaintiffs financed their home in McKinleyville, California, through Greenpoint Mortgage Funding, Inc. ("Greenpoint").[1] SAC ¶ 12. The loan amount of $311,000 was memorialized in a Promissory Note and secured by a Deed of Trust on their property. Id. Ex. A. According to Plaintiffs, Greenpoint, as the lender, was obligated under the TILA to provide them with two copies each of a completed Notice of Right to Cancel at or before the closing. Id. ¶¶ 25-26. However, the two copies of such notice provided to Plaintiffs allegedly did not specify the requisite dates for certain events. Id. Ex. B at 3.

On or about December 5, 2008, Plaintiffs, through counsel, sent a certified letter, styled as a Qualified Written Request ("QWR") under RESPA, addressed to Greenpoint and BACHL (then known as Countrywide Home Loans Servicing, LP). Id. ¶ 23 and Ex. B. In the QWR, Plaintiffs demanded copies of various loan documents, accused Greenpoint and BACHL of having violated TILA by failing to provide completed copies of a Notice of Right to Cancel, and demanded rescission of their loans. Id. Ex. B at 3. Plaintiffs offered to "settle this rescission issue" by proposing that they agree either to modify the loan terms or to rescind the loan entirely. Id. Plaintiffs warned that if Greenpoint and BACHL refused their proposal, they would declare the loan rescinded. Id. at 3-4. The QWR asserted that the deadline under RESPA to acknowledge receipt of the QWR was "11/2/2009"[2] and that the deadline to "answer" was "2/27/2009." Id. at 1. Plaintiffs allege that "BACHL did not acknowledge receipt within the statutory 20 day period nor [did it] provide an answer within 60 business days." SAC ¶ 71. However, Plaintiffs allege that "BACHL did

---

[1] The SAC alleges that the Promissory Note is now owned by FNMA. SAC ¶ 82.

[2] The reference to "11/2/2009" appears to have been a typographical error, and that Plaintiffs actually intended to indicate "1/2/2009," which is twenty business days from December 5, 2008, not excluding holidays.

- 2 -

respond on March 6, 2009…." Id. ¶ 72.[3] A copy of BACHL's response is attached as Exhibit E to the SAC.

### A. PROCEDURAL HISTORY

On June 25, 2009, Plaintiffs filed the instant action in this Court against Defendants Bank of America, as the successor of BACHL, as the loan servicer, and FNMA, as the owner of the loan.[4] After Defendants filed a motion to dismiss the Complaint, Plaintiffs filed a First Amended Complaint ("FAC") on October 14, 2009, against the same parties. The FAC alleged five claims for: (1) violation of TILA; (2) violation of RESPA; (3) violation of California's UCL; (4) breach of the implied covenant of good faith and fair dealing (against FNMA only); and (5) slander of credit.

Defendants filed a motion to dismiss the FAC, which the Court granted in part, and denied in part. See 3/3/10 Order, Dkt. 29. As to Plaintiff's TILA claim, the Court dismissed Plaintiff's damages claim as time-barred, but declined to dismiss their claim for rescission. Id. at 8. The Court dismissed Plaintiff's RESPA claim insofar as it was based on Defendants' refusal to rescind, as "[m]atters pertaining to rescission are not within the scope of [RESPA]." Id. at 10. The only aspect of the RESPA claim which the Court found potentially viable was Plaintiffs' request for documents relating to the servicing of their loan. Id. However, the Court noted that it was unclear from the conclusory allegations presented whether they were complaining that the Defendants "provided no response to their request or that Defendants provided a response that was, in Plaintiffs' view, insufficient under RESPA." Id. at 10-11. The Court dismissed this aspect of Plaintiffs' RESPA claim with leave to amend. As to the remaining state law causes of action, the Court dismissed the UCL and breach of the implied covenant claim with leave to amend, and dismissed the slander of credit claim with prejudice. Id. at 11-13.

---

[3] Plaintiffs' property was foreclosed upon and sold on June 15, 2010. Supp. Req. for Judicial Notice, Ex. A, Dkt. 54.

[4] Defendants contend, and Plaintiffs do not dispute, that BACHL was erroneously sued as Bank of America.

- 3 -

Plaintiffs filed their SAC on March 9, 2010, in response to which Defendants filed a motion to dismiss or strike.  Dkt. 31.  After numerous delays, Plaintiffs finally filed their opposition to the motion on December 7, 2010.  Dkt. 52.  The motion is now fully briefed and ripe for adjudication.

## II.     LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss for failure to state a claim based on deficient pleading, a complaint must satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002).

When considering a Rule 12(b)(6) motion, a court must take the allegations as true and construe them in the light most favorable to plaintiff.  See Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).  "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  Id. at 1950.  Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]"  Id. at 1951 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).  Ultimately, the allegations must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555 (internal quotations and citation omitted).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-

1 Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).  Leave to amend is not required
2 where permitting further amendment to the pleadings would be futile.  See Deveraturda v.
3 Globe Aviation Sec. Servs., 454 F.3d 1043, 1049-50 (9th Cir. 2006).

**III.    DISCUSSION**

**A.    TILA**

TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights."  Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998).  Among other things, TILA provides a right to rescind a loan transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing [the required material disclosures.]"  15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b).  The failure to comply with TILA's disclosure requirements may give rise to a claim for rescission.  See 15 U.S.C. § 1635(a) ("when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately.").[5]

Section 1635(b) set forth the mechanics for the tender or return of money or property following a notice of rescission.  This section provides, in relevant part, that "[u]pon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor…."  15 U.S.C. § 1635(b).  Under the plain language of TILA, the creditor's obligation to rescind precedes the borrower's obligation to tender.  See Yamamoto v. Bank of New York, 339 F.3d 1167, 1170 (9th Cir. 2003) ("The statute adopts a sequence of rescission and tender that must be followed unless the court orders otherwise: within twenty days of receiving a notice of rescission, the creditor is to return any money or

---

[5] TILA also provides for the imposition of damages.  15 U.S.C. § 1640(a).  The Court previously dismissed Plaintiffs' claim for damages under TILA in its prior ruling on Defendants' motion to dismiss.  See 3/3/10 Order at 8.

property and reflect termination of the security interest; when the creditor has met these obligations, the borrower is to tender the property."). However, the Ninth Circuit recognized in Yamamoto that the district court has the "discretion to condition rescission on tender by the borrower of the property he had received from the lender." 329 F.3d at 1171 (internal quotation marks and citation omitted). Such discretion is based on "consideration [of] all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds." Id. at 1173.

The Ninth Circuit has not yet reached the issue of whether Yamamoto imposes an obligation on the plaintiff to allege in his pleadings that he is willing and able to meet the tender requirement in the event the loan at issue is rescinded. District courts within this Circuit have reached different conclusions; some have required a plaintiff to plead the present ability to tender the loan proceeds in order to survive a motion to dismiss, while others have declined to impose such a requirement. See Kakogui v. Amer. Brokers Conduit, No. C 09-4841 JF, 2010 WL 1265201, at *4 (N.D. Cal. Mar. 30, 2010) (collecting cases) (Fogel, J.). This Court has previously concluded that a plaintiff seeking rescission under TILA must allege a present ability and willingness to tender, but has rejected the notion that a heightened pleading standard applies to such allegations. See Olivera v. Am. Home Mortg. Servicing, Inc., 689 F.Supp.2d 1218, 1224 (N.D. Cal. 2010) (Armstrong, J.). Requiring a plaintiff to "allege either the present ability to tender the loan proceeds or the expectation that they will be able to tender within a reasonable time" is appropriate because "[i]t makes little sense to let the instant rescission claim proceed absent some indication that the claim will not simply be dismissed at the summary judgment stage after needless depletion of the parties' and the Court's resources." Romero v. Countrywide Bank, N.A., --- F. Supp. 2d ---, 2010 WL 2985539 (N.D. Cal. July 27, 2010) (Fogel, J.).

In the instant case, Plaintiffs allege that "[they] are ready, willing and able to tender upon knowing the amounts required to tender, including offsets for damages as pled herein, by a combination of a refinance, personal cash reserves and assistance from family." Id.

- 6 -

¶ 44.[6]  At the same time, however, other allegations in the SAC establish that Plaintiffs, in fact, have no present ability to tender or a reasonable likelihood that they will be able to do so in the foreseeable future.  Specifically, Plaintiffs expressly condition their ability to tender on obtaining an offset to the amount owed on the promissory note based on damages recovered in this action.  SAC ¶¶ 42, 44.  It is unclear, however, what damages Plaintiffs anticipate obtaining, given that the Court previously dismissed their TILA damages claim with prejudice, and has now dismissed their RESPA claim, as well.  Moreover, Plaintiffs admit that "their ability to tender <u>will require a refinance</u>," <u>id.</u> ¶ 41 (emphasis added), but that their ability to obtain refinancing is, at best, tenuous in light of the "declining market," <u>id.</u> ¶ 43.  In view of the fact that Plaintiffs' purported willingness and ability to tender is conditioned upon receiving an offset of likely non-existent damages and their equally unlikely ability to refinance their property, the Court concludes that Plaintiffs' TILA claim is subject to dismissal for failure to sufficiently allege their ability and willingness to tender.

### B. RESPA

RESPA imposes certain disclosure obligations on loan servicers who transfer or assume the servicing of a federally related mortgage loan.  12 U.S.C. § 2605(b).  Among those duties is the obligation to respond to a QWR submitted by a borrower.  12 U.S.C. § 2605(e).  Regulations promulgated under RESPA define a QWR as follows:

> [A] qualified written request means a written correspondence (other than notice on a payment coupon or other payment medium supplied by the servicer) that includes, or otherwise enables the servicer to identify, the name and account of the borrower, and includes a statement of the reasons that the borrower believes the account is in error, if applicable, or that provides sufficient detail to the servicer regarding information relating to the servicing of the loan sought by the borrower.

24 C.F.R. § 3500.21(e)(2); <u>see also</u> 12 U.S.C. § 2605(e)(1)(B).

---

[6] Although Plaintiffs have not significantly altered their allegations regarding tender, the arguments proffered by Defendants challenging the sufficiency of such allegations are different—and far more persuasive—than those presented in their prior motion to dismiss the FAC.

"[T]he servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period." Id. § 2605(e)(1)(A). "Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any [QWR]," the servicer must conduct an investigation; if the servicer determines that the account is in error, the servicer must make appropriate corrections to the borrower's account and notify the borrower of the correction in writing. Id. § 2605(e)(2)(A). A violation of the foregoing provisions entitles an individual to seek "any actual damages to the borrower as a result of the failure[.]" Id. § 2605(f)(1). Where the servicer's violation is the result of a "pattern or practice of noncompliance," the individual may also recover "additional damages… in an amount not to exceed $1,000." Id.

In its prior ruling, the Court dismissed Plaintiffs' RESPA claim with leave to amend to specify whether they were claiming that BACHL failed to respond to QWR, or whether the response to the QWR was substantively insufficient. See 3/3/10 Order at 10-11. In their SAC, Plaintiffs clarify that their RESPA claim is based on the timeliness of BACHL's responses. SAC ¶ 71 ("[BACHL] did not acknowledge receipt within the statutory 20 day period nor provide an answer within 60 business days."). Although RESPA deadlines for acknowledging receipt and answering a QWR are triggered by the date the loan servicer *receives* the request, there is no allegation in the SAC as to *when* BACHL received Plaintiffs' QWR. Nonetheless, it is plain from the face of the pleadings that Defendants did not violate RESPA.

As noted, a loan servicer has sixty days, "*excluding legal public holidays, Saturdays, and Sundays*," from receipt of a QWR to submit its response. 12 U.S.C. § 2605(e)(2)(A) (emphasis added). Here, Plaintiffs allege that they sent their QWR by certified mail on December 5, 2008. SAC ¶ 77. Though the SAC does not specify when Defendants received the letter, it is reasonable to presume that, at the earliest, they received the letter on

December 6, 2008—the day after it was mailed.[7] Sixty days from December 6, 2008, excluding weekends *and* legal holidays, is March 6, 2009, which is precisely when the SAC alleges that BACHL responded to the QWR. Id. ¶ 72. Plaintiffs' assertion that the response deadline fell on February 27, 2009, is based on their failure to take into account the intervening holidays falling on Christmas (December 25, 2008), New Years Day (January 1, 2009), Martin Luther King's Birthday (January 21, 2009) and President's Day (February 18, 2009). Tellingly, Plaintiffs fail to respond to Defendants' contentions regarding this issue. Thus, based on the allegations presented, the Court concludes that Defendants' response to Plaintiffs' QWR was timely.[8]

Even if Plaintiffs had alleged a plausible RESPA violation, they have failed to allege that they suffered actual damages. The Court previously ruled that "[a]bsent factual allegations suggesting that Plaintiffs suffered actual damages, Plaintiffs' RESPA claim is insufficiently pled and subject to dismissal." 3/3/10 Order at 10; see also See Haun v. Don Mealy Imports, Inc., 285 F. Supp.2d 1297, 1303 (M.D. Fla. 2003) ("Because Plaintiff does not sufficiently allege actual damages [resulting from the TILA violation], he fails to state a claim and Defendants' motions to dismiss are granted as to this claim."). The SAC fails to rectify this deficiency. Though not entirely clear, Plaintiffs now appear to allege that as a result of BAC's alleged violation of RESPA, they suffered "negative credit reporting and the filing of foreclosure…." SAC ¶ 75. However, Plaintiffs fail to allege any facts to establish a nexus between BAC's alleged failure to acknowledge receipt of the QWR or BAC's alleged one-week delay in responding to the QWR caused Plaintiffs to suffer any

---

[7] The presumption that BACHL received the letter the day after it was mailed is particularly generous to Plaintiffs given that courts typically presume receipt three days after mailing. See Payan v. Aramark Mgmt. Servs. Ltd. P'ship, 495 F.3d 1119, 1125 (9th Cir. 2007) (applying presumption that an EEOC right to sue letter was received three days after it was mailed).

[8] Although it is unclear whether Defendants, in fact, acknowledged receipt of the QWR, it is clear that Plaintiffs also miscalculated that deadline as well. Taking into account for the Christmas holiday and New Years Day, the deadline should have been identified as January 6, 2009, as opposed to January 2, 2009. In any event, Plaintiffs have failed to allege any damages resulting from the alleged lack of such acknowledgment.

injury. To the contrary, Plaintiffs' injury, if any resulted from BAC's decision not to rescind the loans—which, as this Court previously ruled— simply is not actionable under RESPA. 3/3/10 Order at 10 ("matters pertaining to rescission are not within the scope of section 2605(e)").[9]

In sum, Plaintiffs have failed to allege facts sufficient to establish a violation of RESPA. But even if they had, Plaintiffs have still failed to sufficiently allege that they suffered any damages as a result of such violation. Since further amendment to the pleadings would be futile, Plaintiffs' second claim under RESPA is dismissed without leave to amend.

### C.   SUPPLEMENTAL STATE LAW CAUSES OF ACTION

Plaintiffs' remaining claims under the UCL and for breach of the implied covenant of good faith and fair dealing are based upon state law. When the federal claims that served as the basis for jurisdiction are eliminated, either through dismissal by the court or by a plaintiff amending his or her complaint, federal courts may decline to assert supplemental jurisdiction over the remaining state law causes of action. See 28 U.S.C. § 1367(c)(3); Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (court may sua sponte exercise its discretion and dismiss state law claims under 28 U.S.C. § 1367(c)). Given the lack of any remaining federal claims, coupled with the early stage of the litigation, the Court exercises its discretion and dismisses Plaintiffs' state law causes of action without prejudice to submitting such claims in a state court action. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351(1988) ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction."); c.f., Harrell v. 20th Century Ins. Co., 934 F.2d 203, 205

---

[9] Nor have Plaintiffs alleged any facts sufficient to obtain statutory damages, which requires a showing of a "pattern or practice of non-compliance" with RESPA. 12 U.S.C. § 2605(f)(1). Even if BACHL violated RESPA twice by not acknowledging receipt of Plaintiffs' December 5, 2008 letter and sending its response a week late, two violations are insufficient to establish a pattern or practice of non-compliance. See McLean v. GMAC Mortgage Corp., 595 F.Supp.2d 1360, 1365 (S.D. Fla. 2009).

(9th Cir. 1991) ("it is generally preferable for a district court to remand remaining pendant claims to state court.").

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss the SAC is GRANTED as to Plaintiffs' first claim under TILA and second claim under RESPA, which are dismissed without leave to amend. The Court declines to assert supplemental jurisdiction over Plaintiffs' remaining state law causes of action, which are dismissed without prejudice to presenting them in state court.

2. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: January 25, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge